Matter of Asprea v McGinty
2026 NY Slip Op 03495
June 4, 2026
Appellate Division, Third Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Matthew Asprea, Petitioner,
v
Sara W. McGinty, as Acting Justice of the Supreme Court, Respondent.

Decided and Entered:June 4, 2026
CV-25-0632
Calendar Date: April 22, 2026
Before: Aarons, J.P., Reynolds Fitzgerald, Powers, Corcoran And Ryba, JJ.

The Bellantoni Law Firm, Scarsdale (Amy L. Bellantoni of counsel), for petitioner.
Letitia James, Attorney General, Albany (Rachel Raimondi of counsel), for respondent.

[*1]
Powers, J.
Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to CPLR 506 [b] [1]) to, among other things, review a determination of respondent denying petitioner's application for a pistol permit.
In 2024, petitioner applied for a concealed carry pistol permit in Ulster County and, in that application, admitted to having been arrested in the past. However, two of his required character references were unaware of that history. As a result, these character references answered in the negative when inquired as to whether, to their knowledge, petitioner had ever been arrested. Based upon their lack of knowledge as to petitioner's arrest history, respondent FN1 opined that the application contained "falsehoods" which demonstrated a "willingness" on the part of petitioner "to perjure himself," and petitioner's application was denied. Petitioner subsequently commenced the instant proceeding pursuant to CPLR article 78 seeking to annul that determination.
A pistol permit may only be issued by a licensing officer "after investigation and finding that all statements in a proper application for a license are true" (Penal Law § 400.00 [1]). An applicant must be "of good moral character," meaning that he or she has "the essential character, temperament and judgment necessary to be entrusted with a weapon and to use it only in a manner that does not endanger oneself or others" (Penal Law § 400.00 [1] [b]). Among other requirements, an applicant for a concealed carry permit must have an in-person interview with the licensing officer and shall submit the "names and contact information of no less than four character references who can attest to the applicant's good moral character and that such applicant has not engaged in any acts, or made any statements that suggest they are likely to engage in conduct that would result in harm to themselves or others" (Penal Law § 400.00 [1] [o] [ii]). The licensing officer may still require the submission of "any other information or forms" that may be "reasonably necessary and related to the review of the licensing application" (Penal Law § 400.00 [1] [o] [v]). Where a pistol permit application has been denied, or a previously granted permit revoked, "we review whether a rational basis exists for the licensing authority's determination, or whether the determination is arbitrary and capricious" (Matter of Nicolau v Platkin, 246 AD3d 1315, 1316 [3d Dept 2026] [internal quotation marks and citations omitted]; see Matter of Kantarakias v Hyun Chin Kim, 226 AD3d 1020, 1021 [2d Dept 2024], appeal dismissed 42 NY3d 1040 [2024]).
Petitioner provided all the necessary documentation with his application, which included the character reference questionnaire required by Ulster County. In this questionnaire, each character reference was asked, among other things, "[t]o your knowledge, has the applicant ever engaged in any illegal activity?" and "[t]o your knowledge, has the applicant ever been arrested?" Two references answered [*2]both questions in the negative and two answered the first in the negative and the second in the positive. Petitioner had been forthcoming as to his arrest history in his application and, during his interview, he admitted that he had known two references had answered the relevant question in the negative but explained that he did not correct them because they had not asked him whether he had been arrested previously. Based upon petitioner's arrest history, respondent found the information to be "erroneous" and further described that these answers had "denied [it] the opportunity to obtain the honest, informed assessment of [petitioner's] character." As such, respondent denied the application finding there to be "falsehoods" in the application itself and that, because petitioner had known the character references had answered in the way they had, that petitioner was "willing[ ] to perjure himself," which demonstrated a lack of good moral character.
Initially, respondent indicated that there was "good cause" to deny the application because of what she considered false information. Inasmuch as this determination utilized a standard that had been repealed and was not applicable at the time of her consideration of the application, respondent erred in applying the abrogated standard (see generally Penal Law § 400.00 [1] [former (n)], as amended by L 2022, ch 208, § 6). Although respondent also appears to have analyzed the application under the appropriate standard of whether petitioner was of good moral character, we find that determination to have lacked a rational basis. The question the licensing officer took issue with was phrased in the subjective — the character reference was affirming that, to their knowledge, petitioner had not been arrested. Petitioner's arrest history does not render an answer to this question in the negative a falsehood but, instead, indicates that the character reference did not know this detail. Additionally, petitioner's admission that he was aware that two character references had answered the question in the negative when he submitted his application does not indicate a willingness on his part to commit "perjur[y]" as neither character reference had answered untruthfully and petitioner had no express obligation to ensure that the character references had been aware of his arrest history.
Character references are beneficial in that they "further[ ] the efficiency and accuracy of a licensing officer's character assessment" (Giambalvo v Suffolk County, 155 F4th 163, 180 [2d Cir 2025]; see generally Antonyuk v Hochul, 639 F Supp 3d 232, 306-307 [ND NY 2022], affd in part & vacated in part 120 F4th 941 [2d Cir 2024], cert denied ___ US ___, 145 S Ct 1900 [2025]) and, despite petitioner's argument to the contrary, the condition that these references complete certain forms is statutorily supported (see Penal Law § 400.00 [1] [o] [v]). This documentation enables licensing officers to streamline the application process by allowing [*3]character references to complete a questionnaire which may shed light on the applicant's moral character. However, this form is not a substitute for a proper investigation by the licensing officer and does not work to preclude the licensing officer from reaching out to the character references if it is deemed to be necessary. As such, respondent's denial of petitioner's application must be annulled as it was based upon an incomplete investigation into the character references that had been provided (cf. Matter of Sibley v Watches, 194 AD3d 1385, 1386 [4th Dept 2021], appeal dismissed & lv denied 37 NY3d 1131 [2021]; see generally Matter of Cambronne v Russo, 219 AD3d 484, 485 [2d Dept 2023]; Matter of DeSandre v Blackwood, 162 AD3d 1015, 1016 [2d Dept 2018]). Nevertheless, we reject petitioner's request to compel issuance of his permit as mandamus does not lie (see Matter of Kantarakias v Hyun Chin Kim, 226 AD3d at 1021; Matter of Husejnovic v DeProspo, 225 AD3d 597, 599 [2d Dept 2024], appeal dismissed 41 NY3d 1008 [2024]; Matter of Gaul v Sober, 186 AD3d 1821, 1822 [3d Dept 2020]).
Aarons, J.P., Reynolds Fitzgerald, Corcoran and Ryba, JJ., concur.
ADJUDGED that the determination is annulled, on the law, without costs, petition granted, and matter remitted to respondent for further proceedings not inconsistent with this Court's decision.

Footnotes

Footnote 1
Although multiple filings reflect respondent's office as Surrogate, she is an acting Supreme Court Justice and was performing in that capacity when considering petitioner's application (see Penal Law § 265.00 [10]).